426 A.2d 104

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey Joseph DAUGHERTY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 3, 1980.

Decided March 13, 1981.

---

274

Norman D. Callan, Asst. Public Defender, John Woodcock, Jr., Public Defender, Hollidaysburg, for appellant.

Thomas G. Peoples, Jr., Dist. Atty., Hollidaysburg, James V. McGough, Altoona, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

This is an appeal from an Order imposing judgment of sentence entered in the Court of Common Pleas of Blair County. On January 31, 1977, appellant was convicted by a jury of murder of the first degree, criminal conspiracy (murder), and other lesser offenses. The jury sentenced appellant to death. Post-verdict motions were filed, argued and denied. On January 4, 1980, our decision in *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977) having intervened, appellant was sentenced to life imprisonment. The relevant facts are as follows.

On March 11, 1976, during the course of an armed robbery at the Shaw Oil Company, a gasoline station located in Allegheny Township, Blair County, Pennsylvania, at or near the Borough of Duncansville, George Karnes, an eighteen-year-old attendant, was shot five times in the head and killed instantly. At the same time the cash receipts of the station were taken. There were no witnesses to this incident.

The following day, March 12, 1976, appellant, Jeffrey Joseph Daugherty, together with an accomplice and subsequent co-defendant, Bonnie Jean Heath, was apprehended in the Commonwealth of Virginia shortly after an armed robbery in that state. At the time of arrest appellant and his co-defendant were traveling in an automobile which was subsequently identified as having been used in Blair County, and which contained the handgun which was used in the Karnes murder as well as other tangible objects connected with various Blair County crimes.

On December 8, 1976, appellant was convicted by a jury in the Court of Common Pleas of Blair County of murder of the first degree. This conviction was for appellant's participation in an unrelated matter: the robbery-murder of Mrs. Elizabeth Shank.

On December 10, 1976, appellant filed a petition for change of venue in the instant matter. A hearing thereon

was held January 7, 1977, and the petition was denied by the trial court on January 10, 1977. Trial on the instant matter commenced January 17, 1977.

Appellant now advances seventeen assignments of error; with two of appellant's claims we agree and, accordingly, reverse.[1]

Among appellant's assertions of error is one which assails the trial court's denial of his petition for change of venue. Neither party to the instant appeal denies that both the Shank murder trial and the trial of the instant case were attended by a significant amount of news media coverage. Indeed the record of the change of venue hearings[2] precludes any conclusion but that the publicity surrounding these trials was very extensive. Moreover, there is no allegation in this case that the pre-trial publicity was sensational; appellant apparently concedes the Commonwealth its point that the complained of publicity was largely factual and objective. Nevertheless, appellant claims the publicity was inherently prejudicial.

 It is, of course, established that the grant or denial of a change of venue is a matter within the sound discretion of the trial court. *Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978). A trial court's ruling on a motion

1. Because of our disposition of this case we do not address appellant's remaining assignments of error: That the trial court erred in failing to sequester the jury; that the court erred in denying pre-trial motions to suppress; that appellant's right to speedy trial was abridged; that it was error to exclude certain prospective jurors for cause; that the court erred in denying a motion for mistrial based upon newspaper publicity; that it was error to permit a Commonwealth witness to testify; that the court erred in denying a defense request to inspect police notes; that the court erred in admitting certain prosecution evidence; that it was error to deny appellant's demurrer to murder of the first degree; that the court erred in permitting testimony concerning the victim's reputation for peacefulness and nonviolence; that the court made various errors in its charge to the jury; that the court erred in not permitting appellant's grandfather to testify concerning appellant's lack of maturity; and that the court erred in admitting two photographs.

2. The Shank murder trial was preceded by a change of venue hearing as well.

for change of venue will, consequently, be reversed only where there is an abuse of that discretion. *Id.* However, we reaffirmed in *Commonwealth v. Rigler*, 448 Pa. 441, 412 A.2d 846 (1980), that there may occasionally be instances where the pre-trial publicity is so pervasive and inflammatory as to be inherently prejudicial. *See, Commonwealth v. Rolison*, 473 Pa. 261, 374 A.2d 509 (1977); *Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973). In such instances, the normal requirement that a defendant demonstrate actual juror prejudice is obviated. *Commonwealth v. Rigler*, 448 Pa. 441, 412 A.2d 846 (1980); *Rolison, supra.*

In *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979), the Superior Court articulated the law of inherently prejudicial pre-trial publicity.

"Pre-trial publicity will be deemed so inherently prejudicial as to require a change of venue only if the articles appearing were either sensational, inflammatory and slanted toward conviction, rather than factual and objective; revealed the accused has a criminal record; referred to confessions, admissions or reenactments of the crime by the accused; or derived from reports from police and prosecuting officers. Even if one of these elements exists, a change of venue is required only if the publicity has been so extensive, sustained and pervasive, without sufficient time between publication and trial for the prejudice to dissipate, that 'the community must be deemed to have been saturated with it.' " *Id.*, 267 Pa.Super. at 278–279, 406 A.2d at 803 (citation omitted).

██ The record of the instant case discloses that in the period from November 23, 1976, to January 7, 1977, stories concerning appellant's participation in both Blair County murders were broadcast over the television and radio stations serving Blair County in which appellant's name was mentioned approximately 1300 times. During the same period the four newspapers serving Blair County carried

articles, including eleven front-page stories, mentioning appellant's name approximately 400 times. The Commonwealth does not dispute that the publicity was extensive.

Additionally the publicity in the instant case, unlike that in *Kivlin, supra,* continued unabated until the time of trial. "So too, ... the possibility that a period of 'cooling off' must be considered." *Commonwealth v. Cohen,* 489 Pa. 167, 184, 413 A.2d 1066, 1072 (1980).

Included in the complained of publicity were recurrent references to appellant's prior criminality: "the couple has either been convicted or is awaiting trial on murder and armed robbery charges in Virginia and Florida during the crime spree." [3] Heavy emphasis was placed upon the fact that appellant would be required to stand trial twice in Blair County for two murders. At voir dire, all but one of the prospective jurors testified they had knowledge of the instant crime, of the prior trial, and of unresolved charges pending against appellant.

On this record, we conclude that the publicity preceding appellant's trial was, as asserted, factual and objective. That such publicity exists and even that it be widely disseminated may not only be anticipated, but is also an indispensable component of our system of justice. *See, e. g., Frazier, supra.* Nevertheless, where pre-trial publicity, even though objective, contains information such as prior unrelated criminal conduct, a defendant may be prejudiced thereby. This is especially so if the publicity is widespread and continues to a point proximate to trial. In such a case it is an abuse of discretion to deny a motion to change venue. Such was the case here.

Judgment of sentence reversed. Record remanded for new trial.

NIX, J., concurs in the result.

**3.** Venue exhibit 21.