431 A.2d 317
**COMMONWEALTH of Pennsylvania**
**v.**
**Bonnie Jean HEATH, Appellant.**
Superior Court of Pennsylvania.
Argued March 18, 1981.
Filed June 19, 1981.

Winifred H. Jones-Wenger, Philadelphia, for appellant.

William J. Haberstroh, Special Assistant Attorney General, Altoona, for Commonwealth, appellee.

Before PRICE, BROSKY and MONTEMURO, JJ.

PRICE, Judge:

On January 31, 1977, appellant was convicted by a jury of robbery,[1] conspiracy,[2] and violation of the Uniform Firearms Act.[3]  Post-verdict motions in arrest of judgment and for a new trial were denied and appellant was sentenced to consecutive terms of imprisonment of from ten to twenty years on the robbery charge and from five to ten years on the conspiracy charge.  A concurrent one to two year term of imprisonment was imposed for the firearms violation.  In this appeal from the judgment of sentence, appellant contends, *inter alia*, that the trial court abused its discretion by denying her motion for a change of venue on the basis of prejudicial pretrial publicity.  For the reasons which follow, we are constrained to agree and thus reverse the judgment of sentence and remand the case for a new trial.[4]

[1].  18 Pa.C.S. § 3701.

[2].  18 Pa.C.S. § 903.

[3].  Act of December 6, 1972, P.L. 1482, No. 334, § 1, *as amended*, 18 Pa.C.S. § 6101 *et seq.*

[4].  In view of our express holding, we do not address nine of appellant's ten remaining allegations.  We must, however, address appellant's claim that her right to a speedy trial under Pa.R.Crim.P. 1100 was violated, since the remedy for a violation of Rule 1100 is discharge rather than a new trial.  *See* Pa.R.Crim.P 1100 (f).

The charges against appellant arose from an armed robbery at the Shaw Oil Company, a gasoline station in Allegheny Township, Blair County, on March 11, 1976. During the robbery appellant's accomplice and subsequent co-defendant, Jeffrey Joseph Daugherty, shot and killed eighteen year old George Karns, the lone attendant at the station. After taking approximately $400.00 in cash, Daugherty and appellant drove south in a 1964 white Thunderbird bearing Michigan license plates.[5]

On the following day, March 12, 1976, appellant and Daugherty were apprehended in Buckingham County, Virginia, shortly after the commission of an armed robbery of a small grocery store. At the time of their arrest, appellant and Daugherty were traveling in the same automobile they had used in Blair County. A search for the vehicle by the Virginia State Police produced the .25 caliber handgun used in the Karns homicide, as well as Karns' wallet and other items connected with various crimes committed in Blair County.

On March 20, 1976, criminal complaints were filed in Blair County charging appellant and Daugherty with criminal homicide, robbery, conspiracy, and firearms violations. Shortly thereafter, the District Attorney of Blair County instituted proceedings pursuant to the Uniform Criminal Extradition Act (hereinafter Extradition Act)[6] to extradite appellant and her co-defendant from Virginia. On or about July 12, 1976, appellant and Daugherty were tried and convicted of armed robbery and firearms violations in Buckingham County, Virginia. Sentence was imposed, and appellant began serving her sentence at the Virginia Correctional Center for Women in Goochland County, Virginia. By letter dated July 19, 1976, the Secretary of the Commonwealth of

5. The Commonwealth offered no evidence to show that appellant was inside the station building during the robbery and murder. Appellant testified that she remained in the automobile completely unaware of Daugherty's activities inside the station. Daugherty testified that appellant remained seated in the vehicle and that she had no knowledge of the crimes.

6. Act of July 8, 1941, P.L. 288, § 1 et seq., 19 P.S. § 191.1 et seq.

Pennsylvania informed the District Attorney of Blair County that all of the extradition documents relating to appellant had been returned by Virginia. Enclosed with the July 19 letter was a copy of a letter dated July 14, 1976, from the Secretary of the Commonwealth of Virginia to the Governor of Pennsylvania advising him that appellant had been found guilty and sentenced by a Virginia court. The July 14 letter suggested that the Governor of Pennsylvania might "wish to proceed under the agreement on detainers." (N.T. 111, November 23–24, 1976). Shortly after learning that the extradition documents had been returned, the District Attorney of Blair County sought appellant's return pursuant to the Interstate Agreement on Detainers (hereinafter Detainers Agreement).[7] Appellant and Daugherty were subsequently returned to Blair County on September 27, 1976.

Following a preliminary hearing on October 7, 1976, counsel for appellant filed numerous pretrial motions, including a motion to dismiss for violation of Pa.R.Crim.P. 1100 and a petition for change of venue. These motions were consolidated for hearing with motions filed on behalf of appellant in an unrelated case involving the robbery and murder of Mrs. Elizabeth Shank on March 9, 1976. After hearing all motions on November 23 and 24, 1976, the court below denied, *inter alia*, the Rule 1100 motion and the petition for change of venue.

On November 30, 1976, appellant and Daugherty were tried for the Shank robbery-murder. On December 8, 1976, the jury found appellant guilty of robbery and conspiracy, but acquitted her of the homicide charge.[8] Trial in the instant case was scheduled to commence immediately upon conclusion of the first trial. However, appellant's motion for a continuance was granted by the trial court on December 11, 1976. Appellant filed a second petition for change of venue, which was denied by the trial court on January 10,

7. Act of September 8, 1959, P.L. 829, No. 324, § 1 *et seq.*, 19 P.S. § 1431 *et seq.*

8. Daugherty was convicted of all charges.

1977. Trial in the case *sub judice* began on January 17, 1977.

Pa.R.Crim.P. 1100(a)(2) provides that "[t]rial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed." As noted, a criminal complaint was filed against appellant on March 20, 1976. Thus, the initial run date for Rule 1100 purposes was September 16, 1976. Trial actually began on January 17, 1977. Consequently, unless at least 122 days are excluded from calculation of the run date under Rule 1100(d) [9] or justified by an extension of the run date granted under section (c) [10] of the Rule, appellant must be discharged.

The trial court concluded that, despite the Commonwealth's due diligence in seeking appellant's return from Virginia, appellant was unavailable from March 20, 1976 to September 27, 1976, and, therefore, those 191 days were excludable under Rule 1100(d)(1). Appellant contends the court below erred in finding that the Commonwealth was duly diligent in seeking her return. She argues that due diligence was lacking because the prosecution unnecessarily delayed her return to Pennsylvania by proceeding initially

**9.** Rule 1100(d) provides:
In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
(1) the unavailability of the defendant or his attorney;
(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded;

**10.** Section (c) of Rule 1100 provides:
At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

under the Extradition Act rather than under the Detainers Agreement. We disagree.

■ It is well settled that an accused is not deemed unavailable for Rule 1100 purposes merely because he or she is incarcerated elsewhere. *Commonwealth v. Smith*, 274 Pa.Super. 229, 418 A.2d 380 (1980); *Commonwealth v. Bass*, 260 Pa.Super. 62, 393 A.2d 1012 (1978); *Commonwealth v. Clark*, 256 Pa.Super. 456, 390 A.2d 192 (1978). In *Commonwealth v. Warman*, 260 Pa.Super. 130, 393 A.2d 1046 (1978), we observed that:

> Rule 1100(d)(1) provides that "[i]n determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: (1) the unavailability of the defendant or his attorney." Mere incarceration in another jurisdiction does not make appellant unavailable. *Appellant will be considered unavailable only for the period of time during which his presence could not be secured despite due diligence by the Commonwealth. Commonwealth v. Richbourgh*, 246 Pa.Super. 300, 369 A.2d 1331 (1977); *Commonwealth v. Kovacs*, 250 Pa.Super. 66, 378 A.2d 455 (1977). "There is no question, therefore, that the duty imposed on the Commonwealth by Rule 1100 to bring a defendant to trial within the prescribed period is not affected by the fact of his incarceration elsewhere...." *Commonwealth v. McCafferty*, 242 Pa.Super. 218, 224, 363 A.2d 1239, 1241 (1976).

*Id.,* 260 Pa.Super. at 135, 393 A.2d at 1049 (emphasis added). *See generally Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977).

The instant record belies appellant's contention that the Commonwealth failed to exercise due diligence in seeking appellant's return to Pennsylvania. At the hearing on appellant's Rule 1100(f)[11] motion to dismiss the charges, the

---

11. Rule 1100(f) provides that:
   At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such

District Attorney of Blair County testified that he commenced proceedings under the Extradition Act by preparing the necessary documents within one or two days after the filing of the criminal complaint on March 20, 1976. The extradition documents were forwarded to the Governor of Pennsylvania on April 2, 1976. Their receipt was acknowledged in a letter addressed to the district attorney from the Secretary of the Commonwealth of Pennsylvania dated April 8, 1976. The district attorney further testified that he was notified, by letter dated April 23, 1976, that the extradition documents had been received by authorities in Virginia. (N.T. 110–11, November, 23–24, 1976). As noted previously, the Secretary of the Commonwealth of Pennsylvania subsequently informed the district attorney on July 19, 1976, that the extradition documents had been returned by Virginia following appellant's conviction in that state. The district attorney described his subsequent action as follows:

> Upon receipt of the letter of July 19, 1976 from the Secretary of the Commonwealth of Pennsylvania, I contacted the Attorney General's office of Pennsylvania and requested that they make inquiry of the Department of State of the Commonwealth of Virginia, first the Commonwealth of Pennsylvania then the Commonwealth of Virginia, for an explanation as to why the extradition papers had been returned. The only answer I was ever able to obtain was that the State of Virginia preferred that the matter be handled by a detainer process since the prisoner was now regarded as a sentenced prisoner within the Commonwealth of Virginia. I was further advised by the office of the Attorney General of Pennsylvania that it was the view of the Chief Law Enforcement Officer of this Commonwealth, the Attorney General, that the return of the papers from the Commonwealth of Virginia was a matter over which he, the Attorney General of Pennsylvania, would have no control and that the sugges-

application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant.

tion was that we follow the suggestion given by the State of Virginia to proceed under the Uniform Detainer Act.

Having been so advised by the Attorney General's office of Pennsylvania, I immediately commenced the process under the Uniform Detainer Act seeking the delivery of the defendant to the custody of the officials of Pennsylvania for the purpose of returning her to Pennsylvania to stand trial. There is involved in the provisions of the Uniform Detainer Act a prescribed course of procedure which involved the exchange of several sets of documents between the requesting State and the State then holding or having custody of the prisoner. Those documents which needed to be initiated from the office of the District Attorney of this County were prepared and the full procedure as detailed in the Uniform Detainer Act was followed with the proper papers being forwarded to the Commonwealth of Virginia, specifically where required by the Uniform Detainer Act, documents which were prepared in my office were forwarded to the Virginia Correctional Center for Women, Box 1, Goochland, Goochland County, Virginia, and in the course of the following of the procedure as I have indicated it is prescribed in the Uniform Detainer Act, demand was made upon the officials at the Virginia Correctional Center for Women for the delivery of Bonnie Jean Heath to the authorities of this Commonwealth in order that she might be returned to this County to stand trial on the charges filed against her.

I might also add, ... that as part of the procedure prescribed in the Uniform Detainer Act it was also necessary for documentation and application forms to be processed from my office to the office of William B. Robinson, who is the Pennsylvania Administrator on the agreement of detainers, and to the best of my recollection approval which was necessary from Mr. Robinson was delivered to my office by mail on the 14th day of September, 1976.

(N.T. 111–13, November 23–24, 1976). This record supports the trial court's determination that the Commonwealth acted with dispatch in gaining custody of appellant.

■ Furthermore, appellant's claim that the Commonwealth proceeded incorrectly by originally seeking her return pursuant to the Extradition Act rather than the Detainers Agreement is legally unsound. The provisions of the Detainers Agreement are applicable only to persons incarcerated *under a sentence of imprisonment. United States v. Dobson*, 585 F.2d 55 (3d Cir. 1978), *cert. denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978); *Commonwealth v. Hude*, 483 Pa. 489, 397 A.2d 772 (1979). *See Commonwealth ex rel. Coleman v. Cuyler*, 261 Pa.Super. 274, 396 A.2d 394 (1978). Extradition proceedings were commenced in the instant case in April, 1976, while appellant was incarcerated *awaiting trial* in Virginia. "[T]he Agreement on Detainers Act is not applicable to persons being detained for trial who are not serving prison sentences." *Commonwealth v. Hude*, 483 Pa. at 494, 397 A.2d at 775. Extradition was the appropriate procedure for securing appellant's return to Pennsylvania prior to her conviction and sentencing in Virginia. *See Wallace v. Hewitt*, 428 F.Supp. 39, 41 n.6 (M.D.Pa.1976).

■ The trial court thus properly excluded the 191 days between March 20, 1976, and September 27, 1976, from the Rule 1100 computation because appellant was unavailable despite the Commonwealth's diligent efforts to secure her return. Taking into account the days excluded, appellant's trial began 112 days after the filing of the complaint, well within the 180 days mandated by Rule 1100.

■ Despite our conclusion that appellant is not entitled to discharge under Rule 1100, we find that she is entitled to a new trial because the court below abused its discretion in denying appellant's petition for change of venue. Recently, our supreme court reversed the conviction of appellant's co-defendant, Jeffrey Daugherty. *Commonwealth v. Daugherty*, 493 Pa. 273, 426 A.2d 104 (1981). The basis for the court's decision in *Daugherty* was extensive publicity preceding appellant's and Daugherty's joint trial, which publicity not only contained information concerning prior

unrelated criminal conduct,[12] but also continued to a point proximate to trial. The court concluded that Daugherty might have been prejudiced by the widespread pretrial publicity and that in such circumstances the trial court abused its discretion in denying *his* motion to change venue. *Id.* 493 Pa. at 278, 426 A.2d at 106.

The decision in *Daugherty* is, we believe, controlling in the instant case since appellant and Daugherty were tried together. The widespread publicity found potentially prejudicial to Daugherty can be no less prejudicial with respect to appellant. In these circumstances, the trial court abused its discretion in refusing to grant *appellant's* motion to change venue.

Accordingly, the judgment of sentence is reversed and the case remanded to the court of common pleas for a new trial.

12.    Included in the complained of publicity were recurrent references to appellant's prior criminality: "the couple has either been convicted or is awaiting trial on murder and armed robbery charges in Virginia and Florida during the crime spree." Heavy emphasis was placed upon the fact that appellant would be required to stand trial twice in Blair County for two murders. At voir dire, all but one of the prospective jurors testified they had knowledge of the instant crime, of the [Shank murder] trial, and of unresolved charges pending against appellant.
*Commonwealth v. Daugherty*, 493 Pa. 273, 278, 426 A.2d 104, 106 (1981) (footnote omitted).