226

Ronald E. Soja, Petitioner *v.* Pennsylvania State Police, Respondent.

Argued February 7, 1979, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Blatt, DiSalle, Craig and MacPhail. Judges Wilkinson, Jr. and Rogers did not participate.

*Gary M. Lightman,* with him *Mancke & Lightman,* for petitioner.

*Michael H. Garrety,* Deputy Attorney General, with him *J. Andrew Smyser,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE DiSALLE, June 5, 1979:

On September 22, 1977, the Commissioner of the Pennsylvania State Police (Commissioner) ordered that Ronald E. Soja (Soja) be dismissed from his position as state police trooper, effective September 28, 1977. The Commissioner's decision was the culmination of an extensive departmental disciplinary process.

After charges had been brought against Soja by his commanding officer, the Eastern Regional Disciplinary Board of the State Police (Disciplinary Board) convened on May 23, 1977. A hearing was held and the Disciplinary Board found Soja guilty of two second level offenses, approved third level action as to the remaining charges, and recommended that a Court-Martial Board be assembled. He was suspended from his position without pay, pending disposition of the charges by the Court-Martial Board. Shortly thereafter, Soja appealed to this Court, challenging

228

the Disciplinary Board's action and requesting that the court-martial proceedings be enjoined. A hearing was conducted and Judge WILKINSON, treating the matter as a request for temporary relief, denied Soja's petition for stay on June 24, 1977. The Disciplinary Board met again on July 12, 1977, to consider additional charges. It recommended that Soja's suspension continue and that the additional charges also be reviewed by the Court-Martial Board. On August 23, 1977, the Court-Martial Board was convened and testimony was received. After two days of hearings, the Court-Martial Board found Soja guilty of some charges, innocent of others, and recommended to the Commissioner that he be dismissed from the State Police. As noted previously, the Commissioner accepted this recommendation and discharged Soja on September 22, 1977.

Soja alleges that various errors were committed at each level of the proceedings. We will address each seriatim.

Soja's first, and most strongly argued, contention concerns the alleged inability of his attorney to fully participate in the hearing before the Disciplinary Board. Likening that hearing to a preliminary hearing in a criminal proceeding, Soja characterizes it as a "critical stage" in the disciplinary process and claims, therefore, that his due process rights were violated when he was denied effective assistance of counsel. The fatal flaw in his argument is that there is nothing in the record to support Soja's claim that the Disciplinary Board prohibited his attorney from actively participating.

The facts, as seen from the transcript of the hearing held on May 23, 1977, are as follows. Soja's attorney, Mr. Lightman, objected at the outset of the proceedings to a department regulation which would

have prohibited Soja from having a non-participating observer present in addition to his counsel.[1] When the Disciplinary Board refused to rule in his favor on the motion, Mr. Lightman responded that "there is no need for us to participate any further." He thereupon left the room and the hearing continued without him. Thus, it is manifestly apparent that the right to have his attorney interrogate or cross-examine witnesses, or otherwise fully participate in proceedings, was never requested by Soja, and consequently never denied him. Since a party may not pursue on appeal any question not raised before the agency, we are precluded from reaching the merits of this argument. 2 Pa.C.S. §703; see also Pa. R.A.P. 302(a).

With regard to the court-martial proceedings, Soja alleges that the Board's decision is not in accordance with the weight of the evidence. Our scope of review is limited to a determination of whether the findings of Soja's guilt are supported by substantial evidence. *Graci v. Pennsylvania State Police,* 14 Pa. Commonwealth Ct. 630, 324 A.2d 887 (1974); *Luchansky v. Barger,* 14 Pa. Commonwealth Ct. 26, 321 A.2d 376 (1974). We have carefully reviewed the entire record, giving special consideration to those charges discussed

---

[1] This particular regulation is contained in the Pennsylvania State Police Field Regulations Manual at 3-3, §3.04C. Entitled "Minority Status," the regulation provides that when a member believes that his minority status is or may become a factor in the outcome of the proceedings, he may request that the Department's Affirmative Action Officer, or representative, be assigned as a non-participating observer to all questioning, proceedings, and deliberations affecting the minority member. We note in passing that when an objection to this regulation was made before the Disciplinary Board, no assertion was made that Soja's status would become a factor in the outcome of the proceedings. More important, however, is the fact that Soja makes no argument in his brief that the operation of this regulation constitutes a deprivation of his right to due process or violates equal protection.

230

in Soja's brief, and are satisfied that there is indeed substantial evidence to support the Court-Martial Board's conclusions of guilt.

Soja's next contention concerns the receipt by the Commissioner of copies of all investigative reports. It is suggested that this procedure contravenes the requirements of *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975). The Supreme Court in *Dussia* held that Section 711 of The Administrative Code of 1929,[2] vesting the Commissioner with the obligation to determine the guilt or innocence of an accused employe, as implemented by the State Police Field Regulation 3-3, §3.03E, charging the Commissioner with the additional responsibility of deciding when a Disciplinary Board should be convened, created an unconstitutional commingling of judicial and prosecutorial functions in the Commissioner. Subsequent to *Dussia,* new regulations were promulgated eliminating the Commissioner's prosecutorial function. Thus, Soja's contention that the forwarding of copies of investigative reports to the Commissioner compromises his judicial duties is unwarranted. *Dussia* was obviously concerned with the adversarial function then held by the Commissioner. Clearly, receiving copies of investigative reports is no way analogous to the prosecutorial function which the Commissioner formerly held. We cannot conclude that such receipt amounts to an unconstitutional commingling of judicial and prosecutorial duties.

Finally, Soja maintains that the charges against him cannot be sustained, since they were based on regulations which were never published in the Pennsylvania Bulletin. Pursuant to Section 204 of the Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1204, however, the regulations need not have been published,

---

[2] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §251.

since they dealt with agency personnel, practice and procedure.

In summary, we find no substance to any of Soja's contentions. Since the decision of the Commissioner was adequately supported by substantial evidence and all other alleged errors are found to be without merit, we affirm.

### ORDER

AND Now, this 5th day of June, 1979, the disposition by the Commissioner of the Pennsylvania State Police, dated September 22, 1977, upholding the recommendation of the Court-Martial Board that Ronald E. Soja be discharged from the Pennsylvania State Police, is hereby affirmed.