554 A.2d 607

Norma K. Phillips and Samuel B. Phillips, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Housing Finance Agency, Respondent.

Submitted on briefs November 9, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Carolyn L. Carter, Legal Services, Inc.,* for petitioners.

*John F. Goryl,* for respondent.

OPINION BY JUDGE PALLADINO, February 22, 1989:

Norma K. Phillips and Samuel B. Phillips (Petitioners) appeal from a decision of the Pennsylvania Housing Finance Agency which denied Petitioners' application for emergency mortgage assistance under what is known as the Pennsylvania Homeowners' Emergency Assistance Act (Act 91).[1]

In December of 1984, Petitioners purchased a mobile home and an area of land in Shippensburg, Pennsylvania. Petitioners purchased the land with a mortgage from the Letterkenny Federal Credit Union; the mortgage provided for a monthly payment of $113.35. Mr. Phillips had been laid off from his job in November of 1984; thus, at the time Petitioners purchased the land, they were relying on Mrs. Phillips' income to meet their expenses. Petitioners believed, based on statements from Mr. Phillips' employer, that Mr. Phillips would be called back to work soon after the lay-off. However, Mr. Phillips was not called back to work. Petitioners failed to make the

---

[1] Act of December 3, 1959, P.L. 1688, *as amended,* added by the Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §§1680.401c-1680.410c.

scheduled mortgage payment in May of 1985 and they have been in default on the mortgage since that time.

Since April of 1986, Mr. Phillips has been disabled as a result of uncontrollable diabetes, muscle wasting due to diabetes and a herniated disc. In September of 1986, Mrs. Phillips voluntarily terminated her employment in order to care for Mr. Phillips.

Also in September of 1986, Petitioners applied for mortgage assistance under Act 91. The application was denied on January 15, 1987; Petitioners did not appeal from that denial. However, on January 19, 1988, Petitioners again applied for mortgage assistance. Petitioners' second application was denied on February 29, 1988, and Petitioners timely appealed from that decision. A hearing was held by a hearing examiner on April 21, 1988. On May 23, 1988, the hearing examiner affirmed the denial of mortgage assistance, concluding that Petitioners had not met all the conditions for eligibility provided for in section 404-C of Act 91.

Specifically, the hearing examiner found that Petitioners were ineligible for mortgage assistance because: (1) the financial hardship they were suffering was not due to circumstances beyond their control as required by section 404-C(a)(4) of Act 91; and (2) there was not a reasonable prospect that Petitioners would be able to resume full mortgage payments within 36 months after the beginning of the period for which assistance payments would be provided, nor was there a reasonable prospect that Petitioners would pay the mortgage in full by the maturity date, as required by section 404-C(a)(5) of Act 91. The hearing examiner concluded that Mrs. Phillips' termination of her employment was not a circumstance beyond Petitioners' control and that, because Petitioners entered into the mortgage at a time of financial hardship, the total delinquency could not be consid-

ered beyond Petitioners' control. The hearing examiner also concluded that Petitioners' situation was "ongoing" rather than one making them eligible for emergency mortgage assistance. Petitioners have appealed to this court.

Petitioners present four issues for review: (1) whether the hearing examiner erred in disqualifying Petitioners because of Mrs. Phillips' termination of employment to care for Mr. Phillips; (2) whether the hearing examiner erred in concluding that Petitioners were ineligible for emergency mortgage assistance because they entered into the mortgage at a time of financial hardship; (3) whether the hearing examiner erred in concluding there was no reasonable prospect that Petitioners would resume full mortgage payments within 36 months; and (4) whether the hearing examiner violated Petitioners' due process rights. We shall address the last issue first.

Petitioners' due process argument is based on a "Note to Phillips File," initialed by the hearing examiner and dated April 22, 1988. The "Note" indicates that on April 22, 1988, the day *after* the hearing in this case, the hearing examiner spoke with an employee at the Credit Union. The hearing examiner's handwritten notes demonstrate that the Credit Union employee made statements to the hearing examiner regarding Petitioners' mortgage, Mr. Phillips' medical problems and Mr. Phillips' employment history. The hearing examiner noted various discrepancies between the information provided by the Credit Union employee and the testimony given by Petitioners at the hearing. Petitioners assert that the hearing examiner's improper procedure violated their due process rights. We agree.

The essential elements of due process in an administrative hearing are notice and an opportunity to be heard and defend. *Gutman v. State Dental Council and Exam-*

*ining Board, Bureau of Professional Affairs,* 76 Pa. Commonwealth Ct. 193, 463 A.2d 114 (1983). Due process further requires an opportunity to confront and cross examine adverse witnesses. *Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613 (1982). In the present case, Petitioners were given no opportunity to cross-examine or confront the Credit Union employee who gave statements to the hearing examiner. Furthermore, we agree with the Petitioners that the information received by the hearing examiner, even if it did not provide a basis for her decision, could very well have led her to view Petitioners' credibility unfavorably. Accordingly, the improper contact between the hearing examiner and the Credit Union employee taints the entire proceeding, including the hearing examiner's findings of fact and her decision.

Our resolution of the due process issue does not end our review. If the hearing examiner's conclusions were based solely on credibility determinations, we would, of course, remand for a new hearing. However, our review of the transcript of the hearing establishes that, accepting as true every shred of testimony offered on the issue, Petitioners failed to establish that there was a reasonable prospect they would resume full mortgage payments within 36 months.

At the time of the hearing, the mortgage had been in default since May, 1985, neither Mr. nor Mrs. Phillips was employed, and the family's sole source of income was public assistance in the amount of $414.00 per month and food stamps in the amount of $207.00 per month. Mr. Phillips testified that he had applied for and been denied Social Security Disability benefits. N.T. at 7. It was suggested that Mr. Phillips might still be entitled to such benefits. *Id.* Mr. Phillips also testified that he hoped to be able to return to work:

CA At present, does your doctor say you can work?

A1 The doctor says that I should not be able to yet, because he don't [sic] feel that my muscle tone has come back to where it should be.

. . . .

CA Has your doctor released you to work yet?

A1 No ma'm [sic].

CA Are you anticipating that he will release you sometime sometime [sic] in the future?

A1 Very soon I'm hoping.

. . . .

CA Uh, and if, if the um, Housing Finance Agency assists you with your mortgage payment debt, or delinquent that is, the back balance you owe on your mortgage, uh what would your plan be for resuming payments?

A1 Uh, now that my health is getting better, my wife and I have both been hunting a job. So hopefully something turns up that we can both get employment and get back on our feet and make payments like we used to.

HE You are looking for a job although you have not yet been released?

A1 Yes ma'm [sic].

HE Do you think that's safe?

A1 Well, I'm hoping that the doctor releases me real soon and I can go in there and say doctor, you know, I have an opportunity for a job I really want to try it. Maybe he'll say well, you know, maybe I can give it a try.

N.T. at 5-6. Mrs. Phillips testified as follows:

CA Um, do you feel that you are able to go back to work?

A2 Yes.

CA Tell me what you are doing to accomplish that?

A2 Looking around for jobs, putting applications in at places.

CA And um, are you hopeful of finding work?

A2 Hopefully.

CA What other experience do you have besides working at Richard's Textile?

A2 Uh, I was working in the dress factory with clothes. I used to work in the shoe factory, too.

CA And are there jobs of that "INAUDIBLE" available in the Shippensburg area?

A2 Not right now.

CA Are there factories still doing that work?

A2 Yeah.

CA I have no more questions for Mrs. Phillips.

HE Ok. Mrs. Phillips, according to the tax returns you have submitted, it appears that your income while you worked for Richard Textile was in the area of uh, $920 per month. That's your gross.

A2 Yeah.

HE And a net of about a little under $700.

A2 Yeah.

HE Ok. Do you have any type of employment prospects at this point?

A2 No.

HE What is your source of income at present?

A2 Relief.

HE Ok. And how much are you receiving?

A2 $207.

HE Is that once a month or twice a month?

A2 "INAUDIBLE"

HE Pardon me.

A2 Twice.

HE Do you also receive food stamps?

A2 Yes.

HE In what amount please?

A2 $207.

HE OK [sic]. So you're receiving $414 in cash assistance and $207 a month in food stamps?

A2 Yes.

HE ok [sic]. Mr. Phillips wasn't sure about the year, the last year's taxes that you paid. Do you have any idea whether it was 1984 or 1985?

A2 No.

HE No. Ok. Now we have your tax returns for 1984, 85, and 86. Was there any earned income in 1987?

A2 No.

HE Ok. Is there any other source of income?

A2 No.

N.T. 13-14.

Section 404-C(a)(5) of Act 91 provides as follows:

(a) No assistance may be made with respect to a mortgage under this article unless all of the following are established:

. . . .

(5) The agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within thirty-six (36) months after the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

Accepting as true every bit of the above noted testimony, we hold, as a matter of law, that it is insufficient to

establish a reasonable prospect that Petitioners could resume full mortgage payments within 36 months after the beginning of the period for which assistance payments would be provided.[2] Accordingly, despite the egregious procedural improprieties in this case, the Agency's decision is correct as a matter of law.

Accordingly, the decision of the Pennsylvania Housing Finance Agency is affirmed.

### ORDER

AND NOW, February 22, 1989 the decision of the Pennsylvania Housing Finance Agency in the above-captioned matter is affirmed.

---

[2] Because of our resolution of this issue, we need not address the other issues raised by Petitioners.