358

645 A.2d 372

**MECHANICSBURG REHAB SYSTEM, Petitioner,**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1994.

Decided June 24, 1994.

Reargument Denied Aug. 10, 1994.

Kathleen Herzog Larkin, for petitioner.

James T. Steele, Jr., Asst. Counsel, for respondent.

Edward F. Shay, for intervenor.

Before KELLEY and NEWMAN, JJ., and KELTON, Senior Judge.

NEWMAN, Judge.

Healthsouth Mechanicsburg Rehab System (Mechanicsburg) appeals from an order of the State Health Facility Hearing Board (Board), which affirmed the decision of the Pennsylvania Department of Health (the Department). The Department had approved the application of Continental Medical Systems, Inc. (Continental) for a Certificate of Need (CON) which permitted Continental to construct a forty-four bed rehabilitation facility near Harrisburg, Pennsylvania.

## FACTS

On July 17, 1990, the Department received a letter of intent from Continental which contained a proposal to construct a new rehabilitation hospital. On August 10, 1990, the Director of the Department's Division of Need Review, Mr. Jack W. Means, Jr., notified Continental that a CON had to be obtained for the project because it proposed the construction of a new institutional health facility.

On September 10, 1990, the Department received an application, and supporting documentation, from Continental seeking a CON for a forty-four bed freestanding, comprehensive inpatient rehabilitation facility to be constructed in Lower Paxton Township, which is located within Region IV.[1] In addition to forty-four beds, the project would have 50,374 square feet of space that would be constructed at a cost of $8,934,122.00. The application set forth an array of services which Continental proposed to offer in the rehabilitation hospital.[2] The Department assigned the review of the application to Kenneth F. Chenosky.

The Department published a notice in the November 23, 1991 issue of the *Pennsylvania Bulletin*, stating that Conti-

1. Region IV encompasses the Central Pennsylvania area. At the time of the application, it included nine freestanding or rehabilitation units with a capacity of 378 beds.

2. These services included psychiatry, physical therapy, social services, skilled rehabilitation nursing, speech pathology, psychology, clinical dietary services, occupation therapy, respiratory therapy, activities of daily living, education services, prosthetic and orthotic services.

nental's application was complete. Mechanicsburg[3] then wrote to the Department and set forth certain objections. Along with these objections, Mechanicsburg also requested a public hearing and noted its opposition to the entire project.

On December 20, 1991, Mr. Means wrote to Continental stating that a public hearing would be held on Continental's proposal on January 17, 1992. On that date, the Department held a public hearing with Mr. Means presiding, at which time Mechanicsburg expressed opposition to the project on grounds that:

existing rehabilitation facilities in Region IV had additional capacity;

the proposed facility was not the least costly alternative for providing rehabilitation services in region IV;

construction of another rehabilitation facility would constitute unnecessary duplication of services within Region IV; and,

the proposal was inconsistent with the State Health Plan.

Board's decision at 3. After the public hearing, the Department received additional materials from Continental in support of its CON application and from Mechanicsburg in opposition thereto.

In order to determine whether Continental's CON application should be approved, the Department was required to adhere to the criteria of Chapter 37 of the 1990–91 Amendments to the State Health Plan (SHP). These amendments explain, among other things, that the Department should not approve a CON application if a net increase would result in the supply of comprehensive rehabilitation service beds in a region when the average occupancy of existing rehabilitation beds within that region is less than eighty-five percent. The Department, however, viewed the eighty-five percent average occupancy specification for comprehensive rehabilitation service beds as a non-mandatory guideline which allowed the Department to exercise its discretion in deciding the need for

3. Mechanicsburg is a 103–bed comprehensive rehabilitation hospital located approximately 15 miles from the proposed Continental site.

comprehensive rehabilitation beds within Region IV. Occupancy data available to the Department as of May 15, 1992 appeared to indicate that the average occupancy of existing rehabilitation beds located within Region IV was insufficient to permit a finding of need for an additional rehabilitation facility in that region. With the exception of the average occupancy rate issue, the Department had determined by May 15, 1992, that Continental's CON application met each of the criteria and guidelines set forth in the SHP and in the Health Care Facilities Act (Act), Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101—448.904.

Subsequent to May 15, 1992, the Department conducted a telephone survey of existing rehabilitation facilities located within Region IV to determine their occupancy rates for the fiscal year ending June 30, 1992. In the telephone survey, Mr. Means gathered data on bed days, patient days, and admissions. From this data, Mr. Means calculated occupancy for all providers of rehabilitation service in Region IV. Specifically, utilizing the occupancy data available, Mr. Means calculated that for the fiscal year ending June 30, 1992, the average occupancy of existing rehabilitation beds located within Region IV was approximately eighty-three percent. Mr. Means determined that further examination of the available data revealed that the average occupancy rate in the region had been increasing for at least five years, and the Department concluded that it would continue to increase in the future.

On July 24, 1992, the Department completed preparation of a staff summary report containing a recommendation that the CON application filed by Continental be approved. By letter dated July 27, 1992, the Department informed Continental that its proposal was approved on the following grounds:

The proposed project was consistent with the intent of the [SHP].

There was a need for the proposed project inasmuch as the average occupancy of existing comprehensive rehabilitation medical beds in Region IV would exceed eight-five percent by the time the proposed project was implemented.

The applicant demonstrated a strong commitment to providing a high quality rehabilitation program.

The Project was feasible both financially and economically.

Board's decision at 6.

On August 27, 1992, Mechanicsburg filed a notice of appeal from the Department's decision approving Continental's CON application. The appeal was heard on May 7, 1993. On October 22, 1993, the Board affirmed the Department's decision, concluding the following:

1. The decision of the Department of Health to approve the application for a certificate of need filed by [Continental] on September 19, 1990, is in conformance with the intent of the [SHP].

2. The Department of Health was entitled to rely upon the latest available occupancy data (including independently-gathered data concerning occupancy rates at existing rehabilitation facilities in Region IV during the fiscal year which ended on June 30, 1992) in reaching a final decision concerning the certificate of need application filed by [Continental] on September 10, 1990.

3. The decision of the Department of Health approving the application for a certificate of need filed by [Continental] on September 10, 1990, is supported by substantial evidence.

4. In the process of considering the application for a certificate of need filed by [Continental] on September 10, 1990, the Department of Health committed no prejudicial procedural errors.

5. [Mechanicsburg] failed to meet its burden of proof in attempting to rebut evidence contained in letters and other documents received by the Department of Health on July 16, 1992, in connection with the application for a certificate of need filed by [Continental] on September 10, 1990.

Board's decision at 13–14.

Mechanicsburg filed a timely appeal to the Board's adjudication.

## ISSUES

Mechanicsburg presents the following issues:

1. Did the Board err in determining that the decision of the Department was consistent with the [SHP]?

2. Did the Board err in concluding that the decision of the Department was supported by substantial evidence?

3. Did the Board err in holding that the Department did not commit prejudicial procedural error in the assembling and the handling of evidence?

4. Did the Board err in holding that the Department did not violate the due process rights of Mechanicsburg in the assembling and handling of the evidence?[4]

## ANALYSIS

 With respect to its first issue, Mechanicsburg contends that the Board committed an error of law by failing to find that the Department violated the SHP by ignoring the need methodologies contained in it and by ignoring a specific mandatory standard which required the Department to deny an application when the existing rate of occupancy in the region is less than eighty-five percent.

Section 707(a) of the Act mandates that each decision approving a CON must be consistent with the SHP. Specifically, the section provides:

> (a) An application for a certificate of need shall be recommended, approved, and issued when the application substantially meets the requirements listed below: provided that each decision, except in circumstances which pose a threat to public health, shall be consistent with the State health plan: ...

---

**4.** In reviewing a decision of the Board, this court's scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether a constitutional violation occurred or whether the decision is based upon an error of law. *Robert Packer Hospital v. Department of Health*, 158 Pa.Commonwealth Ct. 329, 631 A.2d 813 (1993).

35 P.S. 448.707(a).[5]

SHP is defined by our regulations as follows:

A statement of goals for the State health care system based on the Health Systems Plans for the State and approved by the Statewide Health Coordinating Council and the Governor prepared triennially, reviewed annually and revised as necessary. It describes the institutional health services needed to provide for the well-being of persons receiving care within the State, the number and type of resources, including facilities, personnel, major medical equipment, and other resources, including financial resources, required to meet the goals of the plan, states the extent to which existing health care facilities are in need of modernization, conversion to other uses, or closure and the extent to which new health care facilities need to be constructed or acquired.

28 Pa.Code § 401.2

The relevant portion of the SHP dealing with rehabilitation services is found at Chapter 37; this chapter was adopted on May 23, 1991 and supersedes the original Chapter 37 as well as the 1986 Amendment to the SHP 1982–87. Essentially, the chapter contains ten criteria which are to be employed by the Department in determining need.[6]

With respect to Mechanicsburg's argument that the Department did not consider the criteria in assessing the need for another rehabilitation hospital, Staff Reviewer, Mr. Chenosky, testified as follows to questions from Mechanicsburg's counsel:

Q. Okay. Now, at page 20 the State Health Plan has a section called Need Methodology, and in the first part of that there's a simple ratio, 20 rehabilitation services beds

5. This section has been recently amended (Section 17 of the Act of December 18, 1992, P.L. 1602, No. 179, § 17). Given the date of the instant application and its review, the amended version is not at issue.

6. Some of these criteria include exclusion from Medicare prospective payment; required services and therapies; occupancy levels; relocation of existing beds within a region; special terms of "sole community providers"; barrier free construction; Commission on Accreditation of Rehabilitation Facilities accreditation; access without regard to ability to pay.

per 100,000 population as a method for determining need; is that correct?

A. That's one of the methods discussed, yes.

Q. That's right. And isn't it true that if that need methodology had been used in this case there in fact would have been a surplus of rehabilitation beds in this region.

. . . . .

A. That's what appears there, yes.

Q. Did you ever do another calculation to determine what the 20-bed/100,000 population would result in?

A. No....

(Hearing of May 7, 1993 at 95–96).

Later, Mr. Chenosky testified as follows:

Q. Now, did you ever sit down and make a calculation of the number of beds that would be needed in this region based upon the formula contained in Appendix D and E of the chapter.

A. No, I did not.

(*Id.* at 99).

While the Department and Continental are correct in stating that this court has granted deference to the Department's interpretation of the requirements within the SHP, and recognized that much of what is contained therein is meant only for guidance,[7] the Department cannot rely on one criterion, and ignore the others, when its relied-upon criterion does not conform with a literal reading of the standard.

The Department relied on the aforementioned occupancy rate criterion. In its staff report, the Department concluded that:

[w]hile the data shows the average occupancy is still below 85%, it also shows the average occupancy rate for rehab beds in the region has been steadily increasing. The five

---

7. *Packer Hospital; Morrisons Cove Home v. Department of Health,* 140 Pa.Commonwealth Ct. 469, 593 A.2d 925 (1991), *petition for allowance of appeal denied,* 529 Pa. 653, 602 A.2d 863 (1992).

year trend clearly shows average occupancy will exceed the 85% criterion by the time this proposal is implemented. Staff Report of July 24, 1992 at 7.

■ Mechanicsburg argues that a reading of the criterion indicates that the eighty-five percent occupancy level is a "bright-line" test that Continental clearly failed and therefore should not have been granted a CON.[8] Specifically, this criterion provides as follows:

A finding of no need *should* be made by the Department for any Certificate of Need proposal which would result in a net increase in the supply of comprehensive rehabilitation service beds in a region when the average occupancy of existing rehabilitation beds in the region is less than 85 percent.

(Emphasis supplied). We disagree with this contention since the operative word in the section is *should.* *See Morrisons Cove* (where our court held that the term "will" contained in a "recommended action" is not a mandatory term as are the terms "must" and "shall").

Moreover, equally compelling is the Department's interpretation of the section. The Department reasonably believes that it should be able to project occupancy rate levels at the time the services will be available to the public since it has a mandate from the General Assembly to provide for the orderly and economical distribution of health care resources. To require otherwise could result in the lack of availability of critical services to the public at a needed time in the future.

■ Although we have always given the Department discretion in its evaluation of a CON application process, we do not believe that its decision to grant a CON should be

8. In support of its position in this case, Mechanicsburg directs this court's attention to an application filed by Chambersburg Hospital in June 1992. In that month, the Department had before it a CON application from another Region IV facility, Chambersburg, for a $25 million renovation project. The project included a proposal to add seven new rehabilitation beds at Chambersburg. Mechanicsburg contends that in June, 1992 the Department directed Chambersburg to withdraw its request for those seven beds because the Region IV occupancy rate was less than the eighty-five percent required by the SHP to approve new beds.

predicated on one criterion when the occupancy level does not satisfy a literal reading of that standard. When confronted with the uncertainty of mathematical projections, we believe it is incumbent on the Department to undertake further evaluation, in conformity with the SHP, in order to supplement and support its study and conclusions. Without this additional analysis, we are unable to ascertain whether Continental's application is consistent with the SHP. While we recognize that in these situations certainty is unattainable, we, nevertheless, require that the Department undertake all reasonable means to ascertain the necessity of an additional health-care institution. This requirement is mandated in our present day society, especially because of the crisis that we face in the health-care industry. To allow another facility on the basis of one criterion is short-sighted and imprudent.

Accordingly, we vacate the decision of the Board and remand the matter with instructions to remand to the Department to render additional findings of facts concerning the SHP's need methodologies.[9]

## ORDER

AND NOW, June 24, 1994, the decision of the State Health Facility Hearing Board is vacated, and the matter is remanded to the State Health Facility Hearing Board with instructions to remand to the Department of Health for further evaluations and proceedings consistent with this opinion.

Jurisdiction relinquished.

KELTON, Senior Judge, concurring and dissenting.

I respectfully concur in the majority's vacation of the Board's order but dissent from the broad scope of the remand order. I believe that the Department properly relied upon an 85% average occupancy rate projection in addition to evidence relating to the waiting periods at existing facilities and the cost and quality of the proposed services in evaluating Conti-

9. Given our resolution, there is no need at this time to discuss Mechanicsburg's other issues.

nental's CON application. Therefore, I do not believe that any "further evaluation" or "additional analysis" is necessary. However, because the record shows that Mechanicsburg had an insufficient opportunity to evaluate the July 20, 1992 survey relied upon by the Department in projecting an 85% average occupancy rate, I would vacate the Board's decision and remand this case for the *limited* purpose of permitting the parties to challenge or defend the July 20, 1992 survey, directing the Board to reconsider its order after hearing the challenge to that evidence.

### SHP Requirements

I agree with the majority's determination that the Department had the discretion to project the 85% average occupancy rate criterion to the time when the proposed services will become available. However, I disagree with the majority that to evaluate need in this case, the Department must additionally apply the need methodologies set forth in the SHP.

First, the SHP contains no mandatory terms requiring the Department to apply any or all of the specific need methodologies contained therein. Second, although the Department primarily relied upon the projected increase in determining need, the Department did not base its decision solely on that criterion. Consistent with the SHP, which provides that rehabilitation services should be accessible within a reasonable waiting time and that rehabilitation services "should also be financially accessible to all persons in need" (1503a–04a), the Department also considered problems of access to existing facilities, including evidence of lengthy waiting periods. (R.R. at 1430a–31a.) Further, in reaching its decision, the Department considered the cost and quality of the available services as compared to the cost and quality of the proposed services. (R.R. at 1455a–56a.) Therefore, I believe that in considering problems of access, cost, quality, and the projected increase in occupancy rates in the region, the Department properly exercised its discretion in evaluating Continental's CON application in this case.

## Due Process

Although I believe that the Department applied criteria consistent with the SHP in evaluating Continental's application, I believe that the Department failed to give Mechanicsburg a reasonable opportunity to challenge critical evidence relied upon by the Department in reaching its decision. The record shows that, in projecting an increase in average occupancy rate, the Department relied upon a survey of facilities in the region, compiled by Mr. Means. The Department placed the survey in the case file on July 20, 1992.[1] Mr. Chenosky issued his staff report recommending approval of Continental's proposal on July 24, 1992, which the Department granted on July 27, 1992. Mechanicsburg, thus, had four days in which to meet and rebut the data contained in a survey which had taken Mr. Means several weeks to compile.

We have long held that a party to an administrative proceeding cannot be deprived of its interest without due process of law. *Department of Health v. Rehab Hospital Services Corp.*, 127 Pa.Commonwealth Ct. 185, 561 A.2d 342 (1989), *petition for allowance of appeal denied*, 525 Pa. 607, 575 A.2d 571 (1990). Due process requires a reasonable opportunity to meet and rebut evidence used by an administrative agency. *Soja v. Pennsylvania State Police*, 500 Pa. 188, 455 A.2d 613 (1982). The determination of what constitutes a denial of due process depends upon the nature and circumstances of the case at hand. *Kentucky Fried Chicken v. Unemployment Compensation Board of Review*, 10 Pa.Commonwealth Ct. 90, 309 A.2d 165 (1973).

Particularly in view of alleged defects in the survey, including Mr. Means' acknowledgment that, because of an error which he perceived in the data, he adjusted the occupancy rate for one hospital from 41.8% to 86% (R.R. at 1363a–65a), I would vacate and remand this case to allow Mechanicsburg

1. The record shows that, after a public hearing in January 1992, Continental granted the Department several extensions to allow the Department to complete its review of the application. Although Mechanicsburg implies that the record was to be closed on July 17, 1992, Continental agreed to allow the Department to defer its decision until July 24, 1992. (R.R. at 966a.)

additional opportunity to challenge, and the Department or Continental to defend, the data contained in the July 20, 1992 survey.