SENTRA, INC., Petitioner,

v.

PENNSYLVANIA STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1998.
Decided Nov. 20, 1998.

---

**10.** A vehicle need not be moving on the road in order for injury to occur during its "use." *Spi-* sak; *Fox.*

James M. Becker, Philadelphia, for petitioner.

Wade A. Fluck, Harrisburg, for respondent.

Before SMITH and PELLEGRINI, JJ., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Sentra, Inc. (Sentra) petitions this Court for review of an order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) that revoked its vehicle dealer's license.

On January 4, 1996, the Department of State, Bureau of Professional and Occupational Affairs (Bureau) filed an Order to Show Cause alleging that Sentra had committed a violation of the Board of Vehicles Act (Act), Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. §§818.1—818.28 by employing Mark Greene, whose vehicle salesperson's license had been revoked, as a vehicle salesperson. Greene, who owns Greene Auto, which is located at the same site as Sentra, is the first cousin of Mark Allen, who owns Sentra with his wife.

The Order to Show Cause was filed after Thomas Bat, a Bureau investigator, visited Sentra posing as a potential buyer. Thomas Greene, Sentra's only licensed salesperson, referred Bat to his son Mark Greene, who allegedly discussed the price of a car with Bat and then undertook a partial write-up of the sale. In March 1996, Sentra and the Commonwealth's prosecuting attorney entered into a consent agreement in hopes of settling the matter involving Mark Greene, subject to the Board's approval. The agreement provided that Sentra pay the Board $1,000.00 and that its license would be placed on conditional probation for two years. This agreement also contained a stipulation that the Board would be able to adjudicate the matter even if it disallowed the consent agreement.

In April 1996, the Board rejected the consent agreement, communicating its view that the facts as set forth in the agreement supported revocation. After the filing of various motions and answers thereto, the Board held a hearing on November 14, 1996, during

which both testimonial and documentary evidence were presented. On December 19, 1997, the Board issued an adjudication and order, concluding that Sentra had violated Section 10(15) of the Act, 63 P.S. § 818.10(15), by employing an unlicensed individual as a vehicle salesperson.

In reaching its decision, the Board rendered findings of fact and conclusions of law, including the findings of fact that follow.

5. The duties of Mark Greene as an employee of Respondent include answering potential buyers' questions about vehicles for sale, authorizing vehicle test drives, negotiating the sale of vehicles, preparation of vehicle sale documents and the purchasing of vehicle inventory. (N.T. 15, 18–20, 53–54)

6. Respondent represented that Mark Greene was a member of its sales force in an advertisement. (N.T. 26, C–6)

. . .

8. Respondent knew that Mark Greene's vehicle salesperson license had been revoked prior to hiring him. (N.T. 49)

(Findings of Fact Nos. 5, 6, and 8, Adjudication and Order dated December 19, 1997, p. 3). After the Board revoked Sentra's vehicle dealer's license, Sentra filed its petition for review here.

Sentra raises four questions for this Court's consideration. They are: 1) whether substantial evidence supports the Board's finding that Sentra employed Mark Greene as a vehicle salesperson; 2) whether the Board erred in excluding as evidence a letter demonstrating that it did not hold Mark Greene out as a salesperson; 3) whether the Board violated Sentra's due process rights by adjudicating this case after it had rejected the consent agreement and advised the Commonwealth's prosecuting attorney that revocation of Sentra's license would be the appropriate penalty; and 4) whether the Board abused its discretion and acted arbitrarily

and capriciously in revoking Sentra's vehicle dealer's license on these facts.[1]

We will not address the issues that Sentra raises *seriatim*. Instead, we will first examine whether the Board's actions in this instance violated Sentra's due process rights. Sentra argues that such a due process violation occurred when the Board failed to exclude itself from participating in the hearing. Specifically, Sentra asserts that the Board impermissibly commingled prosecutorial and adjudicatory functions by rejecting the consent agreement and instructing the Commonwealth's prosecuting attorney that the only appropriate sanction against Sentra was revocation, and by then presiding over the hearing and imposing the revocation penalty.

In response, the Board asserts that Sentra waived any objection to the Board's adjudication of the instant case because of a stipulation in the consent agreement, which provided as follows.

9. **THE PARTIES** understand that this agreement is between the Prosecuting Attorney and the Respondent only, and is to have no legal effect unless and until the Board issues an Order adopting it, and the Office of the General Counsel approves the contents of this Consent Agreement and the Board's Order as to legality. Furthermore, should this Consent Agreement not be accepted by the Board, it is agreed that presentation to and consideration of this Consent Agreement and other documents and matters by the Board shall not unfairly or illegally prejudice the Board or any of its members from further participation, consideration or resolution of these proceedings. This paragraph is binding on the parties even if the Board disapproves this Consent Agreement.

The Board argues that, by way of this paragraph, Sentra waived any argument that the Board impermissibly commingled functions. Further, the Board argues that, in conjunction with 1 Pa.Code § 35.115, which provides that unaccepted settlement proposals are

---

1. We must affirm the Board's decision unless there has been a violation of Petitioner's constitutional rights, an error of law was committed, or necessary findings of fact are unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Naglich v. State Board of Motor Vehicle Manufacturers, Dealers and Salesmen*, 86 Pa.Cmwlth. 478, 485 A.2d 851 (1984).

privileged and inadmissible in agency proceedings, it did not consider the consent agreement when making its decision.

■ Although we acknowledge that "[a] party can waive even constitutional issues, such as commingling[,]" *Turner v. Pennsylvania Public Utility Commission*, 683 A.2d 942, 946, n. 8 (Pa.Cmwlth.1996), we do not agree with the Board that Sentra did so merely by stipulating to the language contained in the above-quoted paragraph. That Sentra "agreed that *presentation to and consideration of this Consent Agreement* and other documents and matters by the Board shall not unfairly or illegally prejudice the Board or any of its members from further participation, consideration or resolution of these proceedings" (emphasis added) is *not* tantamount to agreeing that, *if the Board rejects the agreement, it may then recommend the penalty to be imposed before hearing the case.*

In an affidavit filed with the Bureau on January 24, 1997, Sentra's attorney, James M. Becker, Esq., stated as follows.

2. I filed an Entry of Appearance on August 7, 1996. Prior to my involvement, Sentra, Inc. was represented in this matter by its former counsel, James M. Curran, Esquire, of East Brunswick, New Jersey. Mr. Curran and David L. Callihan, Esquire, the Commonwealth's prosecuting attorney, negotiated the Consent Agreement in this matter that was submitted to the Board at this April 1996 meeting for approval.

3. Shortly after my appearance on behalf of Sentra, Inc., I contacted Mr. Callihan to explore whether or not the Commonwealth would be amenable to discussing alternative resolutions of this matter short of revocation of Sentra's license.

4. Mr. Callihan declined to have such additional discussions. His stated reason was that in rejecting the proposed Consent Agreement, the Board had communicated to him that given the information outlined in the Consent Agreement, *the Board viewed revocation as the appropriate resolution.*

(Emphasis added).

The Board does not contravene Attorney Becker's sworn statement. Instead, the Board acknowledges that, while it did not instruct the prosecuting attorney that revocation of Sentra's license was the *only* acceptable mode of discipline, "[i]t did indicate that the facts, as stipulated to in the Consent Agreement, would warrant the revocation of a license." (Board's brief, p. 9). In our estimation, 1 Pa.Code § 35.115, which provides that unaccepted settlement proposals are privileged and inadmissible in evidence against those persons claiming the privilege, does not cure the defect created by the Board's revocation recommendation, which was made prior to its adjudication and actual imposition of revocation.

■ Sentra asserts that the Board's actions in first stating that, on these facts, revocation was the proper resolution, and then in hearing the case and imposing revocation violated its due process rights in a manner proscribed by *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). There, our Supreme Court decided that the State Board of Medicine improperly commingled prosecutorial and adjudicatory functions, thereby violating Dr. Lyness' due process rights when it both initiated a professional licensing prosecution against him and acted as the ultimate fact finder in determining whether a violation had taken place.

In reaching its holding in *Lyness,* the Supreme Court quoted from, *inter alia,* its earlier decision in *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975). In *Dussia,* the Supreme Court held that a state police field regulation providing for the state police commissioner to convene a court-martial board, together with a statute giving the commissioner the power to decide the guilt or innocence of the accused and to impose a sanction, impermissibly commingled functions in the commissioner, such that the regulation was invalid and a permanent injunction was issued. The Supreme Court stated in *Dussia* and reiterated in *Lyness:*

The decision to institute a prosecution is such a fundamental prosecutorial function

that it alone justifies concluding a dual capacity where the individual also is charged with the responsibility of making the ultimate determination of guilt or innocence. *Moreover, it is a decision which requires a judgment as to the weight of the evidence against the accused, a judgment which is incompatible with the judicial function of providing an impartial forum for resolution of the issues presented.*

*Dussia,* 466 Pa. at 165, 351 A.2d at 674 (emphasis added; footnote omitted); *Lyness,* 529 Pa. at 543, 605 A.2d at 1208 (emphasis altered).

In the matter *sub judice,* we agree with the Board that it was the Commonwealth's prosecuting attorney who issued the Order to Show Cause and who proceeded to prosecute the matter after the Board rejected the consent agreement. To that extent, the Board's actions did not precisely involve a commingling of prosecutorial and adjudicatory functions in the nature of *Dussia, Lyness,* and their progeny. *Nevertheless,* in communicating that revocation would be the appropriate resolution given the facts as contained in the consent agreement, the Board necessarily weighed the "evidence" provided by Sentra's admissions and formed a judgment as to what sanction that "evidence" warranted. Such an act is in the first instance a prosecutorial function, and, as has previously been explained, it conflicts with the act of providing an impartial judicial forum.

A review of the instant consent agreement reveals that, in an attempt to settle the case, Sentra admitted certain salient facts to be true. Based on those facts, the Board rejected the consent agreement and "unofficially" determined that revocation was a more appropriate resolution than the fine and two-year conditional probation contemplated by that agreement. The Board then proceeded to revoke Sentra's vehicle dealer's license after it finally heard the case. Given this scenario, we have every reason to believe that, however unwittingly, the factual record was tainted before the Board ever adjudicated these proceedings. Since the agreement reached by the parties in a settlement attempt may well have improperly influenced the Board as fact finder, and any such showing of pre-judgment must be taken seriously, we will vacate the Board's order. We further remand this case to the Board for the appointment of a neutral hearing examiner to preside over a formal hearing and render a decision as to the appropriate penalty to be imposed on Sentra, if any.[2]

### ORDER

AND NOW, this 20th day of November, 1998, the Order of the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons, dated December 19, 1997, is hereby vacated. The case is remanded to the Board for the appointment of a neutral hearing examiner to preside over a formal hearing and render a decision as to the appropriate penalty to be imposed on Sentra, if any.

Jurisdiction Relinquished.

---

2. Due to the result that we reach today, we need not address the other issues that Sentra raises.