**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| STEPHEN PASCAL AND CHRIS GATES, | : | No. 22 WAP 2020 |
| | : | |
| Appellants | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | February 28, 2020 at No. 496 CD |
| v. | : | 2019, affirming the Order of the |
| | : | Court of Common Pleas of |
| | : | Allegheny County entered March 27, |
| CITY OF PITTSBURGH ZONING BOARD | : | 2019 at No. SA 18-000792. |
| OF ADJUSTMENT, AND CITY OF | : | |
| PITTSBURGH AND NORTHSIDE | : | ARGUED: April 13, 2021 |
| LEADERSHIP CONFERENCE, | : | |
| | : | |
| Appellees | : | |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: SEPTEMBER 22, 2021**

We granted discretionary review to consider whether the Commonwealth Court

erred in approving a decision granting zoning relief despite: 1) the timing of the decision

and 2) the alleged conflict of interest of one member of a three-member panel of the

Pittsburgh Zoning Board of Adjustment (ZBA). We affirm in part and reverse in part, and

remand for a new hearing before a different three-member panel of the ZBA.

**I. Background**

Appellee, Northside Leadership Conference (NLC), is a non-profit community

development corporation that owns contiguous real property at 404-410 East Ohio Street

in Pittsburgh situated in a local neighborhood commercial zoning district designated for

mixed use. The property consists of several attached three-story commercial buildings

forming a single structure that formerly housed retail space, a restaurant and two dwelling units. On March 18, 2018, NLC applied for variances and special exceptions necessary to, *inter alia*, maintain the retail space, remodel and reopen the restaurant and permit the construction of six additional dwelling units.[1]

On May 17, 2018, a three-member panel of the ZBA, Alice B. Mitinger (Chair), LaShawn Burton-Faulk, and John J. Richardson, conducted a hearing on NLC's applications. Appellants Stephen Pascal and Chris Gates attended the hearing and objected to NLC's applications. At the end of the meeting, Chair Mitinger stated the parties could submit additional findings of fact and conclusions of law for a period of up to two weeks after the hearing transcript became available. On June 12, 2018, the parties submitted written proposed findings of fact and conclusions of law, and on August 23, 2018, the ZBA issued its final decision granting the variance and special exception applications subject to several conditions not applicable here. Appellants filed an appeal

---

[1] NLC sought to upgrade the property due to its deteriorated condition. It planned to create the new dwelling units on the second and third floors, maintain retail space on a portion of the first floor, resume restaurant use on the second and third floors, demolish and rebuild the existing rear portion of the second floor and add a new rear portion to the third floor, with both newly-built portions constructed entirely within the existing rear wall line. NLC additionally proposed to use an area consisting of 313 square-feet in the rear of the property as an additional ingress/egress point for tenants, deliveries and trash removal. Accordingly, NLC applied for: 1) a variance to allow a 2.66:1 floor-area ratio where Section 904.02.C of the Pittsburgh Zoning Code (Code) imposes a maximum 2:1 floor-area ratio; 2) a variance from the usual off-street loading space requirement (Section 914.10.A of the Code requires at least one off-street loading space for multi-unit residential floor areas up to 20,000 square feet); 3) a special exception for restaurant use (Section 911.02 of the Code requires a special exception for restaurant use in a local neighborhood commercial zoning district); 4) a special exception for off-site parking spaces (Section 914.07.G.1(a) of the Code contains a Use Table outlining the standards applicable to shared parking); and 5) a special exception waiving the residential compatibility standards for rear-yard setbacks (Section 916.02.A.7 of the Code requires a minimum setback of 15 feet for zoning lots that abut the interior side-yard of a residential zone).

in the court of common pleas. Among other things, appellants alleged the zoning decision should be overruled because it was not timely decided.[2] The trial court affirmed without taking any additional evidence, determining the zoning decision was timely and proper.

Appellants then appealed to the Commonwealth Court. Significantly, appellants alleged for the first time that ZBA member Burton-Faulk, who voted to grant NLC's requested variances and special exceptions, was also a member of NLC's Board of Directors.[3] Appellants alleged the zoning decision should be overturned because Burton-Faulk did not recuse herself despite her clear conflict of interest. Appellants also repeated their claim the ZBA decision was untimely. The Commonwealth Court affirmed. *See Pascal v. Zoning Bd. of Adjustment*, 496 C.D. 2019, 2020 WL 973340, at *1 (Pa. Cmwlth., Feb. 28, 2020) (unpublished memorandum). The panel held the zoning decision was timely even though it was not entered within forty-five days of the hearing because the record did not close until the ZBA received the parties' proposed findings of fact and conclusions of law several weeks after the hearing; additionally, the decision was announced within forty-five days after several additional agreed upon extensions of time, and thus the ZBA complied with the time limit for rendering a zoning decision under the Code. *See id.* at *3.

The panel also held that although ZBA member Burton-Faulk may have had a conflict of interest, the conflict did not require reversal without evidence that the conflict

---

[2] Section 922.07.C of the Code, relating to special exception applications, and Section 922.09.D, relating to variance applications, provide that when the ZBA fails to render a zoning decision within forty-five days of the public hearing, "the decision shall be deemed to have been rendered in denial . . . unless the applicant has agreed in writing or on the record to an extension of time." PITTSBURGH ZONING CODE §§922.07.C, 922.09.D.

[3] The Commonwealth Court correctly concluded appellants had not waived the issue because they did not learn of the alleged conflict of interest until "[l]ong after the [ZBA] hearing concluded" and "the issue was raised at the first possible opportunity." *Pascal v. Zoning Bd. of Adjustment*, 496 C.D. 2019, 2020 WL 973340, at *4 n.8 (Pa. Cmwlth., Feb. 28, 2020) (unpublished memorandum).

"'controlled or unduly influenced the other members of the [ZBA] in any manner which would raise doubts as to the validity of **their** votes.'" *Id.* at *4, *quoting Borough of Youngsville v. Zoning Hearing Bd. of Youngsville*, 450 A.2d 1086, 1091 (Pa. Cmwlth. 1982) (emphasis and alteration in original).

Appellants sought allowance of appeal and we granted review of the following questions:

> (1) Whether the Commonwealth Court erred in affirming the trial court's order upholding the grant [to NLC] of the zoning relief requested despite the conflict of interest of ZBA member Burton-Faulk?
>
> (2) Whether the Commonwealth Court erred in affirming the trial court's order upholding the grant to [NLC] of the zoning relief requested where the ZBA failed to issue a written decision within forty-five (45) days of the public hearing and where applicant did not agree in writing or on the record to an extension of time within forty-five (45) days of the public hearing?

*Pascal v. City of Pittsburgh Zoning Bd. of Adjustment*, 240 A.3d 104 (Pa. 2020) (*per curiam*). We further directed the parties to state their positions or stipulate if possible as to whether Burton-Faulk served on the NLC Board of Directors during the ZBA proceedings below. The parties submitted a joint stipulation confirming Burton-Faulk "was a board member of the Northside Leadership Conference from the time of the Zoning Board of Adjustment proceedings on May 17, 2018 until the date the Zoning Board of Adjustment rendered its decision on August 23, 2018." Stipulation of the Parties, 11/23/20.

## II. Timeliness of ZBA Decision

We first consider the second question granted, as the timeliness of the ZBA decision impacts the validity of its order granting relief, and by extension, the propriety of the subsequent court decisions affirming that order, which are implicated in the present appeal to this Court. As the issue involves statutory interpretation, our standard of review

is *de novo* and our scope of review is plenary and non-deferential. *See Crown Castle N.G. E. LLC v. Pa. Pub. Utils. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).

Appellants assert the August 23, 2018 decision of the ZBA granting NLC's zoning applications was filed too late — ninety-eight days after the April 12, 2018 hearing — in violation of the Code's provisions requiring that a decision be filed within forty-five days of the hearing. Appellants observe the Code mandates a zoning application be deemed denied if this forty-five-day period is exceeded and there has been no agreement in writing or on the record to an extension of time. *See* Appellants' Brief at 13, *citing* PITTSBURGH ZONING CODE §§922.07.C, 922.09.D (for both variance and special exception requests, the ZBA "shall act" on an application "within forty-five (45) days of the [ZBA] hearing . . . unless the applicant has agreed in writing or on the record to an extension of time"). Appellants recognize Section 923.02.C of the Code provides "'[t]he [ZBA] shall adopt and maintain rules of procedure not inconsistent with the provisions of this Code.'" *Id.* at 17, *quoting* PITTSBURGH ZONING CODE §923.02.C. Appellants also recognize the parties here agreed to comply with ZBA procedures allowing the postponement of a decision until forty-five days after the record was closed, but nevertheless insist that any ZBA procedural rule, whether agreed to by the parties or not, that permits the filing of a ZBA decision beyond forty-five days of the hearing is materially inconsistent with the Code provisions, which must be strictly construed. *See id.*, *citing Relosky v. Sacco*, 523 A.2d 1112, 1116 (Pa. 1987) ("procedural provisions of zoning statutes must be rigidly adhered to"). Appellants thus claim the zoning applications should have been deemed denied and the lower tribunals erred in upholding the ZBA decision granting zoning relief.

In response, appellees observe the ZBA's website states its decision will issue within forty-five days after the record is closed.[4]  In addition, all parties were advised at the close of the hearing that they would be permitted an additional two weeks following the production of the hearing transcript to file proposed findings of fact and conclusions of law, at which time the record would be closed.  *See Pascal*, 2020 WL 973340, at *3, *citing* R.R., 5/17/18 at 99.  According to appellees, all parties agreed to this procedure announced at the hearing, as well as several extensions of time after the record was closed, and the ZBA decision issued thereafter was thus timely.

There are three statutory provisions implicated here:  1) Section 922.07.C of the Code, which provides, in relevant part, that the ZBA shall hold a hearing on a special exception application, and "shall act" to approve or deny the application "within forty-five (45) days of the [ZBA] hearing."  If the ZBA "fails to render its decision within the period required by this subsection, . . . the decision shall be deemed to have been rendered in

---

[4] In pertinent part, the ZBA website in February 2020 explained:

> In many cases, the record will be closed after the hearing has completed. For in-depth cases or appeals with considerable opposition, the ZBA may allow proposed Findings of Fact and Conclusions of Law to be submitted by each party.  Typically, the ZBA allows two or three weeks after the hearing for these to be submitted, at which point the record will then be closed.  After the record is closed, the ZBA will issue a decision within 45 days.

*Pascal*, 2020 WL 973340, at *2.  Currently, the ZBA website provides:

> After the record for a hearing is closed, the ZBA will issue a decision within 45 days.  This decision is sent to the Applicant and all parties who testified at the hearing.

> Usually, the ZBA will close the record at the end of a hearing.  Occasionally, for complex cases, or projects with considerable community opposition, the ZBA will keep the record open after a hearing to allow submittal of additional evidence.

Department of City Planning: Zoning Board of Adjustment, PITTSBURGH, PA, http://pittsburghpa.gov/dcp/zba (last visited August 4, 2021).

denial of the applicant **unless** the applicant has agreed in writing **or** on the **record** to an extension of time." PITTSBURGH ZONING CODE §922.07.C (emphasis added); 2) Section 922.09.D of the Code which provides nearly identical language respecting a "variance application." PITTSBURGH ZONING CODE §922.09.D; and, 3) Section 923.02.C of the Code which provides, "[t]he [ZBA] **shall** adopt and maintain rules of procedure **not inconsistent** with the provisions of this Code." PITTSBURGH ZONING CODE §923.02.C (emphasis added).

These unambiguous provisions, when read together to give effect to them all, evince the intent of the drafters to allow an agreed-upon extension of time for creating the record at ZBA proceedings, before the ZBA's decision must be rendered. *See* 1 Pa.C.S. §1921(a) (when engaging in statutory construction, court's duty is to give effect to legislature's intent and to give effect to all of statute's provisions); *see also Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 290-91 (Pa. 2018) (best indication of legislative intent is plain language of statute). Moreover, the procedure posted on the ZBA website, stating the ZBA decision will be rendered within forty-five days after the record is closed is clearly aligned with the Code, which expressly permits an applicant to agree on the record to an extension of time. Here, the record shows that, at the conclusion of the hearing, all parties agreed to keep the record open until two weeks after the hearing transcript became available, so that they could draft their respective findings of fact and conclusions of law, and thus, the ZBA decision "due date" was extended at that time. *See Pascal*, 2020 WL 973340, at *5. Moreover, both lower tribunals correctly recognized that subsequent extensions of the decision deadline were requested and granted in writing, such that the August 23, 2018 final decision of the board was timely entered by virtue of those extension agreements. We therefore affirm the Commonwealth Court's decision on this issue.

### III. Conflict of Interest

Having determined the ZBA decision was timely filed, we now consider appellants' claim the Commonwealth Court erred in upholding the grant of zoning relief requested by NLC despite the conflict of interest of ZBA member Burton-Faulk. Appellants assert Pennsylvania law requires a governmental body charged with decision-making authority to avoid even the appearance of possible impropriety, and that actual harm caused by the conflict need not be established. *See* Appellants' Brief at 7, *citing Horn v. Twp. of Hilltown*, 337 A.2d 858, 860 (Pa. 1975) (zoning board is governmental decision-making body which must avoid appearance of possible prejudice; no actual harm necessary to show denial of due process). Appellants primarily rely on this Court's determination in *Horn* that "'[a] fair trial in a fair tribunal is a basic requirement of due process[;] . . . [t]o this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.'" *Horn*, 337 A.2d at 860, *quoting Schlesinger Appeal*, 172 A.2d 835, 840-41 (Pa. 1961) (additional citations omitted). Moreover, appellants argue the panel's reliance on *Youngsville* to determine the conflict of interest here was not disqualifying ignored this Court's clear directive in *Horn*. Appellants maintain Burton-Faulk should have recused herself from deciding NLC's zoning applications because she simultaneously served as a board member of NLC, and thus had a conflict of interest resulting in possible unfair bias. Appellants observe *Horn* provides, "'our system of law has always endeavored to prevent even the probability of unfairness. To this end, no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.'" Appellants' Brief at 12 (emphasis omitted), *quoting Horn*, 337 A.2d at 860 (internal citation omitted).

Appellee ZBA maintains there is no evidence Burton-Faulk influenced the decision of her two colleagues. ZBA insists that, because its decision granting the variances and exceptions was unanimous, the decision should stand; specifically, appellee argues even if Burton-Faulk had been disqualified from the panel, the result of the proceedings would have been the same as the zoning applications would have been approved by a unanimous vote of two to zero. According to the ZBA, invalidation of the zoning decision would be necessary only if the conflicted member's participation had determined the outcome.

Appellee NLC concedes Burton-Faulk "should not have participated in the ZBA's consideration of [NLC's] application[s] . . . in order to avoid any appearance of impropriety[.]" NLC Brief at 25-26. Nevertheless, NLC posits "any mistake here is harmless on the record of this action." *Id.* at 26. NLC observes that while this Court is not bound by *Youngsville*, the reasoning in that case is persuasive, and should control the outcome here. NLC contends that *Youngsville* directs the ZBA decision in this case was proper because members "Mitinger and Richardson were present [at] the May 17 hearing and both later voted to approve the application[s]." *Id.* at 27 (internal citation omitted). NLC emphasizes, "[a]ppellants have never suggested that Mitinger or Richardson should have recused [themselves] from voting on th[e] application[s,]" because there is simply "[n]o [e]vidence . . . that Burton-Faulk somehow influenced the vote of either Mitinger or Richardson." *Id. at* 27, 29. NLC also relies on *Riverwalk Casino, L.P. v. Pennsylvania Gaming Control Board*, 926 A.2d 926 (Pa. 2007), where this Court held gaming control board members who recused themselves from one class of gaming license applications due to connections to the licensing applicants were not ineligible to decide applications regarding other applicants; the *Riverwalk* Court noted the allegation that recused board members might exert control or influence over other board members

was "mere speculation." *Riverwalk Casino*, 926 A.2d at 940. NLC observes appellants "have not taken any steps to develop a record" of Burton-Faulk's improper influence. NLC Brief at 31.

The crux of appellants' claim is that the ZBA decision made under the cloud of Burton-Faulk's conflict of interest effected a denial of their due process rights. We have recognized that "[d]ue process principles apply to quasi-judicial or administrative proceedings," *Kowenhoven v. Cty. of Allegheny*, 901 A.2d 1003, 1009 (Pa. 2006), and whether a due process violation has occurred raises a question of law for which this Court's standard of review is *de novo* and scope of review is plenary. *See Glatfelter Pulpwood Co. v. Commonwealth*, 61 A.3d 993, 998 (Pa. 2013). We are guided by relevant precedent in this matter of first impression.

In *Horn*, appellants owned a quarry in Hilltown Township, Bucks County. The township passed a zoning ordinance prohibiting quarry operations in the area where appellants' quarry was located. Appellants continued their quarry operations and the township issued a cease and desist order that appellants disregarded. Thereafter, the township filed a complaint in equity through its solicitor, Charles Wilson, seeking an injunction against appellants. After a series of hearings regarding the injunction, at which the township was represented by Wilson, the parties agreed the "matter should be submitted to the Zoning Hearing Board of Hilltown Township for a decision." *Horn*, 337 A.2d at 859. At the zoning hearing, Wilson served a dual role; he acted as the township solicitor and as the zoning board solicitor. Wilson "conducted the [hearing] and ruled on evidence presented by appellants and on objections made to the township's evidence presented by . . . himself, when an objection was interposed by appellants." *Id.* "Thereafter, Mr. Wilson, as the zoning board's solicitor, advised the board in legal matters concerning appellants' case." *Id.* This Court "granted allocatur to determine whether the

above procedure was a denial of due process, absent a showing of actual harm to appellants." *Id.*

The *Horn* Court observed:

> "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. . . . This Court has said . . . that every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law."

*Id.* at 860, *quoting Schlesinger Appeal*, 172 A.2d at 840-41 (internal quotations and citations omitted); *cf. Williams v. Pennsylvania*, __ U.S. __, 136 S.Ct. 1899, 1905-06 (2016) (recognizing "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. This objective risk of bias is reflected in the due process maxim that no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." (internal quotation and citations omitted)).

In *Dussia v. Barger*, 351 A.2d 667 (Pa. 1975), this Court again endorsed the principle that "no man is permitted to try cases where he has an interest in the outcome." 351 A.2d at 674 (internal quotation and citation omitted). The *Dussia* Court considered the alleged "unconstitutional commingling of functions" of the Commissioner of the Pennsylvania State Police Department, where the commissioner was charged with two duties: 1) to act in an investigatory and advisory capacity and determine if a disciplinary board should be convened to review court-martial recommendations; and 2) to make the ultimate substantive decision to recommend any individual police officer to a court-martial.

*Id.* at 672-74. The Court observed, "'[t]hese types of commingling of functions of investigation or advocacy with the function of deciding are . . . plainly undesirable.'" *Id.* at 673, *quoting Sung v. McGrath*, 339 U.S. 33, 44 (1950). "'A genuinely impartial hearing, conducted with critical detachment, is psychologically improbable if not impossible, when the presiding officer has at once the responsibility of appraising the strength of the case and of seeking to make it as strong as possible.'" *Id.* at 673, *quoting McGrath*, 339 U.S. at 44. Thus, the *Dussia* Court held that this "intermingling of functions" was "constitutionally prohibited" as a violation of due process. *Id.* at 674-75, *citing Schlesinger Appeal*, 172 A.2d at 841. This Court has held, in such cases, actual bias need not be established, as "[a]ny tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even the appearance of bias." *Gardner v. Repasky*, 252 A.2d 704, 706 (Pa. 1969) (same individual should not have served on board seeking suspension of police officer and Civil Service Commission determining officer's suspension appeal).

Moreover, relevant case law instructs that actual bias need not be shown in a case where a decision-maker rules on a matter in which he or she has a personal interest. In *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009), the United States Supreme Court considered whether Brent Benjamin, a justice of the West Virginia Supreme Court of Appeals, should have recused himself from considering a case involving an entity whose chief executive officer had contributed $3 million to political organizations supporting Benjamin's election. The High Court noted the salient question was not whether a jurist harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge or decision-maker in his position is likely to be neutral, or

whether there is an unconstitutional "potential for bias." *Id.* at 881. The Court held the instances that require recusal, as an objective matter, are those "'in which experience teaches that the probability of actual bias on the part of the judge or decision[-]maker is too high to be constitutionally tolerable.'" *Id.* at 877, *quoting Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The Court recognized Justice Benjamin asserted he could fairly and impartially judge the merits of the underlying case, and did not question his subjective findings of impartiality and propriety, or determine whether there was actual bias. *Id.* at 882. Instead, the *Caperton* Court determined "there was here a serious, objective risk of actual bias that required Justice Benjamin's recusal." *Id.* at 886; *see also Mun. Publ'ns, Inc. v. Court of Common Pleas of Phila. Cty.*, 489 A.2d 1286, 1289 (Pa. 1985) (recusal required wherever there is substantial doubt as to jurist's ability to preside impartially). Accordingly, the High Court reversed and remanded for further proceedings. *Caperton*, 556 U.S. at 890.

Notwithstanding the foregoing analogous precedent, the Commonwealth Court instead relied on its own decision in *Youngsville* to hold there was no due process concern here because there was no allegation or proof Burton-Faulk influenced the votes of the other ZBA members. In *Youngsville*, the appellant borough challenged its zoning board's decision to allow a nonconforming use of a twenty-seven-unit trailer park on the appellee's property. One of the issues on appeal was whether "the Board's decision was tainted because one of its members should have disqualified himself from participation in the decision[] . . . [because] he was employed by the appellee to survey the land in question and he testified as a witness in support of the appellee's earlier attempt to amend the zoning ordinance applicable to the premise." *Youngsville*, 450 A.2d at 1090. The

Commonwealth Court panel upheld the zoning decision despite the dual roles served by the zoning board member. The panel recognized "the fact that one of the Board members was employed to survey the property here concerned, coupled with his participation in an earlier proceeding as a witness in support of the appellee's proposed use, does raise a significant question as to his objectivity in this matter." *Id.* at 1091. However, the panel majority ultimately concluded reversal of the zoning decision was not necessary because "there is nothing in the record before us which indicates that this Board member actually conducted himself in a biased or prejudicial manner" and there was "no allegation that the member in question controlled or unduly influenced the other members of the Board in any manner which would raise doubts as to the validity of **their** votes." *Id.* (emphasis in original).

We reject the Commonwealth Court's view that *Youngsville* controls here. First, that case is distinguishable on its facts. The allegedly conflicted zoning board member in *Youngsville* had testified in support of the municipality's zoning ordinance that was later applied to a variance request considered in due course by the board. *See id.* at 1090. Here, the conflicted individual simultaneously served as a board member of the **applicant** and the zoning board tasked with deciding the applicant's request for variances and special exceptions. In any event, we disapprove of the reasoning in that split panel decision. Given the clear conflict of interest here — a conflict that created an appearance of impropriety conceded by the applicant itself — we cannot agree that the zoning decision should stand because there was no proof the other board members were influenced by that potential bias. Although the ZBA is not a court, it is nevertheless a governmental body charged with applying the law to zoning matters arising in its purview,

and the principles of due process apply with the same force. *See Kowenhoven*, 901 A.2d at 1009 ("Due process principles apply to quasi-judicial or administrative proceedings."). As we recognized in *Horn*, an individual should not be permitted to try cases where she has an interest in the outcome, *see* 337 A.2d at 860, and as we stated in *Gardner*, actual bias need not be established because a tribunal "must not only be unbiased but must avoid even the appearance of bias," *Gardner*, 252 A.2d at 706 (internal quotation and citation omitted).

We therefore conclude that whether or not Burton-Faulk was actually biased in favor of the successful zoning applicant is not dispositive here. Indeed, her participation in ruling on the propriety of zoning applications brought by an organization on whose board she sat at all relevant times so clearly and obviously endangered the appearance of neutrality that her recusal was required under well-settled due process principles that disallow a person to be the judge of his or her own case or to try a matter in which he or she has an interest in the outcome. *See Horn*, 337 A.2d at 860; *see also Dussia,* 351 A.2d at 674. We hold the Commonwealth Court erred in rejecting appellants' arguments on this issue and upholding the resulting tainted ZBA decision.

## IV. Conclusion

Accordingly, we affirm the Commonwealth Court's order in part and reverse in part. We remand for a new hearing on the appellee NLC's zoning applications before a newly constituted panel of the ZBA.

Chief Justice Baer and Justices Saylor and Mundy join the opinion.

Justice Wecht files a concurring and dissenting opinion in which Justice Todd and Justice Donohue join.